IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE LIMU COMPANY, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| QUALITY CRAFT SPIRITS LTD | : | NO. 17-930 |

## MEMORANDUM

**Padova, J.**                                                                                                     **March 13, 2018**

Plaintiff, the Limu Company, LLC ("Limu"), has brought this action against Quality Craft Spirits Ltd. ("QC Spirits"), asserting that QC Spirits has infringed its registered trademark "BLU FROG," which Limu uses for health supplements and energy drinks. Limu has also asserted claims against QC Spirits for unfair competition and unjust enrichment under state law. QC Spirits has moved to dismiss the Complaint for lack of personal jurisdiction or, in the alternative, for improper venue. For the reasons that follow, the Motion is denied.

## I. FACTUAL BACKGROUND

The Complaint alleges the following facts. Limu, a Florida limited liability company, markets and sells nutritional supplements and energy drinks. (Compl. ¶¶ 1, 6.) Since October 2008, Limu has used the trademark BLU FROG in connection with its sales of its products in interstate commerce. (Id. ¶ 7.) Limu sells an energy drink under the "BLU FROG mark [that] contains a proprietary blend of Focoidan-rich limu moui extract and a host of naturally power-packed fruits, vitamins, herbs, and minerals." (Id. ¶ 8.) Limu's BLU FROG energy drink is "the largest selling seaweed based energy drink in the world." (Id. ¶ 9.)

Limu owns "U.S. Trademark Reg. No. 3,659,163 for BLU FROG, in International Class 5 for Dietary and nutritional supplements; Dietary supplemental drinks and in International Class 32 for Energy drinks." (Id. ¶ 10 (internal quotation marks omitted).) U.S. Trademark

Registration No. 3,659,163 for the trademark BLU FROG was issued on the Principal Register of the United States Patent and Trademark Office on July 21, 2009. (Id. ¶ 11.) U.S. Trademark Registration No. 3,659,163 "is valid, subsisting, uncancelled, and unrevoked." (Id.) Limu has continuously used the BLU FROG mark which is the subject of U.S. Trademark Registration No. 3,659,163. (Id. ¶ 12.) As a result of its continuous use of this mark, "as well as its marketing and advertising efforts, [Limu] has amassed substantial goodwill and prestige in" the BLU FROG mark. (Id. ¶ 13.)

QC Spirits, a Canadian corporation with its principal place of business in Canada, "has adopted and is using the BLU FROG mark in connection with the sale of vodka." (Id. ¶¶ 2, 14.) QC Spirits' BLU FROG designation is identical to Limu's BLU FROG trademark, including the unique spelling of "BLU." (Id. ¶ 16.) QC Spirits has applied for a United States trademark registration for BLU FROG in International Class 33 for vodka. (Id. ¶ 17.) The trademark application originally listed QCIL International, Inc. as the owner of the application, but the application was amended on August 2, 2016 to change the owner to QC Spirits. (Id. ¶ 18.) Both QCIL International, Inc. and QC Spirits are subsidiaries of Quality Craft, Ltd., a Canadian corporation with its principal place of business in British Columbia, Canada. (Id. ¶ 20.)

QC Spirits worked with a distributor in Pennsylvania to obtain approval to sell vodka under the BLU FROG designation in Pennsylvania. (Id. ¶ 21.) On February 1, 2017, the Pennsylvania Liquor Control Board ("PA LCB") accepted BLU FROG vodka as a regular new item. (Id.)

On February 28, 2017, Limu sent a letter to QC Spirits, asking that QC Spirits stop using the BLU FROG name and mark, because QC Spirits' mark is confusingly similar to Limu's registered BLU FROG mark. (Id. ¶ 22.) QC Spirits' BLU FROG designation "is identical in

appearance, sound, connotation, and commercial impression to Plaintiff's registered mark BLU FROG." (Id. ¶ 23.) Vodka and energy drinks are related goods because energy drinks are used as mixers for alcoholic drinks containing vodka. (Id. ¶ 24.) Consequently, QC Spirits' use of the BLU FROG designation for vodka has and will in the future cause harm to Limu's business and goodwill generated under its registered trademark BLU FROG. (Id. ¶ 25.)

The Complaint asserts six claims against QC Spirits: trademark infringement pursuant to 15 U.S.C. § 1114 (Count I); trademark infringement under Pennsylvania common law (Count II); unfair competition pursuant to 15 U.S.C. § 1125(a) (Count III); unfair competition under Pennsylvania common law (Count IV); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count V); and unjust enrichment pursuant to Pennsylvania common law (Count VI). Limu seeks an injunction to prevent QC Spirits from using the BLU FROG mark or any mark containing the term "BLU" and/or "FROG," using any trademark that imitates or is confusingly similar to Limu's trademark BLU FROG, or that is likely to cause confusion, mistake, or misunderstanding of the origin of Limu's products. Limu also seeks compensatory damages, an accounting of all sales of QC Spirits derived from the actions complained of in the Complaint; destruction of all materials under the control of QC Spirits that bear the BLU FROG trademark; accounting and disgorgement of all profits made by QC Spirits as a result of the aforementioned actions; costs and reasonable attorney's fees; and an order requiring QC Spirits to withdraw its pending trademark application for BLU FROG.

## II. PERSONAL JURISDICTION

### A. Legal Standard

QC Spirits has moved to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). "Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(k)(1)(A)); see also Fed. R. Civ. P. 4(k)(1) ("Serving a summons . . . establishes personal jurisdiction over a defendant . . . (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."). "Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over nonresident defendants 'to the fullest extent allowed under the Constitution of the United States' and 'based on the most minimum contact with this Commonwealth allowed under the Constitution.'" Ackourey v. Sonellas Custom Tailors, 573 F. App'x 208, 211 (3d Cir. 2014) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b)). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" O'Connor, 496 F.3d at 316-17 (alterations in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"'[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" Bootay v. KBR, Inc., 437 F. App'x 140, 143 (3d Cir. 2011) (alteration in original) (quoting Carteret Savs. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). The plaintiff, however, "'bears the burden to prove, by a preponderance of the evidence, facts

sufficient to establish personal jurisdiction,'" Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012) (quoting Carteret Savs. Bank, 954 F.2d at 146), and "may not rest solely on the pleadings to satisfy this burden." Gutierrez v. N. Am. Cerruti Corp., Civ. A. No. 13-3012, 2014 WL 6969579, at *2 (E.D. Pa. Dec. 9, 2014) (citing Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 669 (E.D. Pa. 2005); and Carteret Savs. Bank, 954 F.2d at 146). "Once the defense has been raised, 'then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence' and may not 'rely on the bare pleadings alone.'" IBEW Local Union No. 126 Ret. Plan Tr. Fund v. Cablelinks, Inc., Civ. A. No. 15-1925, 2015 WL 8482831, at *1 (E.D. Pa. Dec. 10, 2015) (quoting Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

There are two types of personal jurisdiction, general and specific. O'Connor, 496 F.3d at 317 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984)). The Supreme Court has explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing Int'l Shoe, 326 U.S. at 317). "Specific jurisdiction, on the other hand, depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (alteration in original) (quotation and citations omitted). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (quotation omitted).

QC Spirits argues that we lack both general and specific jurisdiction over it. Limu agrees that we do not have general personal jurisdiction over QC Spirits, but maintains that we do have specific jurisdiction over QC Spirits because of its contacts with the Commonwealth of Pennsylvania in connection with this case. (Pl.'s Br. at 5-6.)

### B. Discussion

QC Spirits contends that we lack specific jurisdiction over it because it has no actual physical presence in this Commonwealth and has not, itself, acted in Pennsylvania. "In determining whether there is specific jurisdiction, we undertake a three-part inquiry." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). "First, the defendant must have 'purposefully directed [its] activities' at the forum." Id. (alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." Id. (quoting Helicopteros Nacionales, 466 U.S. at 414; and O'Connor, 496 F.3d at 317). "And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" Id. (alteration in original) (quoting Burger King, 471 U.S. at 476). "Jurisdiction may be asserted even when a party does not physically enter the forum state." Phoenicia Sports & Entm't, LLC v. New York Cosmos, LLC, Civ. A. No. 12-0772, 2012 WL 3155526, at *5 (E.D. Pa. Aug. 2, 2012) (citing Burger King, 471 U.S. at 476). This is because "'it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.'" Id. (quoting Burger King, 471 U.S. at 476).

The evidence of record shows that QC Spirits is a Canadian company. (Devost Decl. ¶ 3.) It engaged Liberty Premium Brands LLC ("Liberty"), a Delaware company that has no offices in Pennsylvania, to market BLU FROG vodka in the United States. (Id. ¶¶ 6-7.) QC Spirits, with Liberty's assistance, appointed American Spirits Exchange Ltd. ("ASE") "as its representative to distribute BLU FROG vodka in the United States, with the right to register that brand in each state." (Id. ¶ 7, Ex. E.) ASE is a Pennsylvania company with an office in Bridgeport, Pennsylvania. (Id. ¶ 8; Lavigne Decl. ¶ 4.) QC Spirits has communicated with ASE in Pennsylvania by mail. (Devost Decl. Ex. E.) ASE submitted a request on behalf of QC Spirits to the PA LCB for approval of the sale of BLU FROG vodka in Pennsylvania. (Id. ¶ 8; Lavigne Decl. ¶ 4.) QC Spirits also hired "an attorney with a law firm located in Philadelphia to assist in reaching an agreement with [the PA LCB] concerning their (QC Spirits' and [the PA LCB]'s) business relationship." (Devost Decl. ¶ 9.) QC Spirits has communicated with its Pennsylvania attorney by telephone and email. (Id.) Moreover, while QC Spirits had not yet sold any BLU FROG vodka in Pennsylvania at the time the Complaint was filed, it has since begun to sell vodka in this Commonwealth. QC Spirits shipped 342 cases of BLU FROG vodka, each case containing 12 bottles, to the PA LCB in May 2017, which arrived in Pennsylvania in June 2017. (Docket No. 15 at 1.) BLU FROG vodka has thus been available for purchase by consumers in Pennsylvania state liquor stores since June 2017. (Id.) Indeed, counsel for Limu purchased BLU FROG vodka at a Pennsylvania state liquor store in June 2017 (Frandsen Decl. ¶¶ 2-4), and has learned that BLU FROG vodka is available at 187 state liquor stores in Pennsylvania. (Id. ¶ 5.)

We conclude that the record evidence establishes that QC Spirits "purposefully directed [its] activities" at Pennsylvania, D'Jamoos, 566 F.3d at 102 (quotation omitted), by: (1) appointing ASE, a Pennsylvania company with offices in Pennsylvania to act on behalf of QC

7

Spirits to enable the distribution of BLU FROG vodka in Pennsylvania; (2) by hiring a Pennsylvania attorney to work on behalf of QC Spirits to reach an agreement with the PA LCB for the distribution of BLU FROG vodka in Pennsylvania; (3) obtaining approval to sell BLU FROG vodka in Pennsylvania; (4) shipping BLU FROG vodka to Pennsylvania for sale; and (5) selling BLU FROG vodka in Pennsylvania.[1] The record evidence also shows that the activities that QC Spirits directed towards Pennsylvania relate to the subject matter of this litigation, since the subject matter of this litigation is QC Spirits' sales of vodka that allegedly infringe on Limu's trademark. Thus, we conclude that Limu has satisfied its obligation to prove by a preponderance of the evidence that QC Spirits has had sufficient contacts with Pennsylvania to support our exercise of specific personal jurisdiction in this case. See Altvater Gessler-J.A. Baczewski Int'l v. Sobieski Destylarnia S.A., Civ. A. No. 06-6510, 2010 WL 2813617, at *5-7 (S.D.N.Y. July 16, 2010) (concluding that Polish liqueur manufacturer was subject to specific personal jurisdiction in New York in trademark infringement suit where the Polish liqueur manufacturer entered into an agreement with an importer located in New York for the importation of the liqueur into the United States, the liqueur was available for purchase in New York, and "numerous purchases of the liqueur took place" in New York).

---

[1] The record also establishes that QC Spirits purposefully contacted both ASE and its attorney in Pennsylvania by mail, telephone, and email, and that those contacts are connected to the subject matter of this litigation, i.e., the sale of vodka with an allegedly infringing mark in Pennsylvania. See Phoenicia Sports & Entm't, 2012 WL 3155526, at *5 (concluding that the defendant purposefully directed its activities at Pennsylvania by participating in telephone and email negotiations with the plaintiff, which was located in Pennsylvania); Toussant v. Williams, 62 F. Supp. 3d 417, 424 (E.D. Pa. 2014) (concluding that defendant's telephone calls and emails to plaintiff in Pennsylvania were sufficient to establish minimum contacts for specific jurisdiction over defendant in Pennsylvania).

QC Spirits argues that our assertion of personal jurisdiction would not "'comport with fair play and substantial justice.'" Isaacs v. Trustees of Dartmouth Coll., Civ. A. No. 13-5708, 2014 WL 4186536, at *8 (E.D. Pa. Aug. 25, 2014) aff'd sub nom. Isaacs v. Arizona Bd. of Regents, 608 F. App'x 70 (3d Cir. 2015) (quoting O'Connor, 496 F.3d at 317). A defendant who opposes the exercise of personal jurisdiction on this ground "must present a 'compelling case that the presence of some other considerations would render the jurisdiction unreasonable' because once minimum contacts have been established jurisdiction is presumptively constitutional." Id. (quoting O'Connor, 496 F.3d at 324; and citing Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998)). "The Supreme Court has looked to several factors to determine whether fairness enables or strips jurisdiction." Id. "These factors include: 'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies . . . and the procedural and substantive interests of other nations.'" Id. (alterations in original) (quoting O'Connor, 496 F.3d at 324). QC Spirits merely asserts that it would be significantly burdened by having to defend this action in Pennsylvania, but does not support its assertion with any supporting evidence. We conclude, accordingly, that QC Spirits has failed to "present a 'compelling case'" that our exercise of personal jurisdiction would be unreasonable in this case and we deny the Motion to Dismiss for lack of personal jurisdiction. Id. (quotation omitted).

## III. VENUE

QC Spirits has moved, in the alternative, to dismiss this action for lack of venue pursuant to Federal Rule of Civil Procedure 12(b)(3). The Complaint asserts that venue is proper in this District pursuant to 28 U.S.C. § 1391(b), which provides that:

9

> A civil action may be brought in --
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A corporation is "deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." Id. § 1391(c)(2). Furthermore, "a defendant not resident in the United States may be sued in any judicial district . . . ." Id. § 1391(c)(3). Since we have concluded that we have specific personal jurisdiction over QC Spirits in this case, we further conclude that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (c)(3). Accordingly, QC Spirits' Motion to Dismiss for lack of venue is denied.

## IV. CONCLUSION

For the reasons stated above, QC Spirits' Motion to Dismiss is denied in its entirety. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____
John R. Padova, J.